AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Virginia



CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| | ) Case No. 1:17-SW-787 |
| INFORMATION ASSOCIATED WITH FACEBOOK USER ID GSTAR JOSE MOSCHINO THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | ) ) ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A, incorporated by reference

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a) | Possession with intent to distribute controlled substances |
| 18 U.S.C. § 924(c) | Possession of a firearm in furtherance of a drug trafficking offense |

The application is based on these facts:
See attached affidavit of John M. Capano, Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), incorporated by reference.  This application for a search warrant is made pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A).

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

John M. Capano, Special Agent (ATF)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 17 Nov 17

City and state: Alexandria, Virginia

_____ /s/_____
Ivan D. Davis
**United States Magistrate Judge**

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with the Facebook user ID "Gstar Jose Moschino" that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## **ATTACHMENT B**

### **Particular Things to be Seized**

I.     **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)     All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos,

(d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments;

gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)    All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)    All "check ins" and other location information;

(g)    All IP logs, including all records of the IP addresses that logged into the account;

(h)    All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)    All information about the Facebook pages that the account is or was a "fan" of;

(j)    All past and present lists of friends created by the account;

(k)    All records of Facebook searches performed by the account;

(l)    All information about the user's access and use of Facebook Marketplace;

(m)    The types of service utilized by the user;

(n)    The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)    All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)    All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 21 U.S.C. § 841(a) and 18 U.S.C. § 924(c) involving MARK JAMAHL STEPHENS, including, for each user ID identified on Attachment A, information pertaining to the following matters:

      (a) The possession or sale of controlled substances and/or the possession of firearms;

      (b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

      (c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

      (d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).



F I L E D

NOV 1 7 2017

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID GSTAR JOSE MOSCHINO THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | No. 1:17-SW-787 |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, John M. Capano, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.      I have been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) since 2016. Prior to my appointment with the ATF, I was a sworn Police Officer in the New York City Police Department from 2014 to 2016. In my capacity as a law enforcement officer, I have investigated individuals for the illegal possession and use of firearms, illegal possession and distribution of controlled substances, and for committing violent crimes. Many of these investigations involved the execution of search warrants, and led to the

arrest and conviction of individuals for violations of state and federal firearms and drug trafficking laws.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841(a) and 18 U.S.C. § 924(c) have been committed by MARK JAMAHL STEPHENS.  There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## PROBABLE CAUSE

5.     On or about May 5, 2017, at approximately 7:51 p.m., law enforcement officers encountered an individual subsequently identified as MARK JAMAHL STEPHENS outside of 201 N Street SW, Washington, D.C.  The officers observed STEPHENS and other individuals consuming alcohol as they stood around a BMW sedan bearing Virginia registration tags.  As the officers approached the group, they observed STEPHENS appear to place an object inside the vehicle.

6.     After arriving at the vehicle, officers spoke to STEPHENS, who identified the BMW as his own.  STEPHENS also admitted to the officers that he possessed a Glock firearm for which he did not have a license.  Law enforcement thereafter searched STEPHENS's person and vehicle and found two Glock firearms, three cellular phones, a digital scale, $3125.00 in

2

U.S. currency, and approximately 25.3 grams of a substance that field-tested positive for the presence of cocaine. The officers placed STEPHENS under arrest.

7.      In a post-arrest interview, STEPHENS advised law enforcement that he was in Virginia prior to coming into Washington D.C.  He also stated that he carried guns in Virginia "every single day," and that he had previously sold a Ruger .380 pistol to a friend.  STEPHENS denied ownership of the suspected cocaine base seized from his vehicle, although he acknowledged ownership of the guns found along with the drugs in the vehicle's center console. STEPHENS also acknowledged ownership of an iPhone seized during the search.

8.      Following STEPHENS's arrest,[1] ATF agents obtained warrants in the District of Columbia to search the three phones seized from STEPHENS, including STEPHENS's iPhone. A search of STEPHENS's iPhone revealed numerous photographs of STEPHENS in possession of various firearms, including a shotgun, a rifle, and multiple pistols, including one with an extended magazine.   The search also revealed numerous photographs of STEPHENS in possession of thousands of dollars of U.S. currency and suspected marijuana.

9.      On or about June 23, 2017, ATF investigators received records from SSG Tactical, a federal firearms licensee in Fredericksburg, Virginia.  According to these records, STEPHENS purchased four firearms from SSG Tactical in 2017, including one of the Glock pistols seized on May 5, 2017, a Century Arms M85 PV PAP 5.56mm pistol, bearing serial number M85PV003920, a Glock G19 9mm pistol, bearing serial number ACES394, and a Century Arms C39 7.62mm pistol, bearing serial number C39P02403.  When STEPHENS

---

[1] The United States Attorney for the District of Columbia charged STEPHENS with possession with intent to distribute while armed.  STEPHENS was placed on bond pending resolution of those charges.

purchased these firearms, he listed an identified address in Stafford, Virginia as his current address on ATF Form 4473 Firearms Transactions Records ("the Target Residence"). He also provided SSG Tactical with a Virginia driver's license with STEPHENS's name and photograph, and the address of the Target Residence.

10.     On or about July 7, 2017, the Honorable Theresa Carroll Buchanan, United States Magistrate Judge, Eastern District of Virginia, signed a warrant authorizing the search of the Target Residence.

11.     On or about July 12, 2017, law enforcement officers executed a search on the Target Residence, in Stafford, Virginia, in the Eastern District of Virginia. During execution of the search, law enforcement identified an upstairs bedroom within the Target Residence as belonging to STEPHENS ("the Target Room"). Within the Target Room, on the window sill, law enforcement found and seized a Glock G19 9mm pistol, bearing serial number ACES394. On the window sill, law enforcement also found court documents, a notarized letter, an insurance bill, and a Virginia driver's license, each bearing STEPHENS's name and the Target Residence address. On the window sill, law enforcement also found a digital scale with suspected marijuana residue.

12.     Also within the Target Room, located in a duffel bag under the bed, law enforcement found and seized a Century Arms C39 7.62mm pistol, bearing serial number C39P02403, and a Century Arms M85 PV PAP 5.56mm pistol, bearing serial number M85PV003920. Law enforcement also found beneath the bed an eight-ounce jar containing baking powder. Based on my training and experience, I am aware that drug distributors frequently use baking powder to make cocaine base and/or as an additive to heroin or cocaine.

13.     Also within the Target Room, within the closet, law enforcement found clothing items I recognized as belonging to STEPHENS based upon my review of the photographs in STEPHENS's phone.  In the closet, law enforcement also found and seized a vacuum sealer and currency counter, which, in my training and experience, are instrumentalities of drug distribution.  Located in a backpack within the closet, law enforcement found and seized a stack of $100 bills, and four individually-wrapped bags each containing approximately one ounce of suspected marijuana.  Law enforcement field-tested the contents of one bag, which field-tested positive for marijuana.  Based upon my training and experience, this amount of marijuana, the manner of its packaging, and the presence in the Target Room of drug distribution paraphernalia is consistent with drug distribution.

14.     Following the search, law enforcement placed STEPHENS under arrest.  The United States Attorney's Office for the Eastern District of Virginia subsequently charged STEPHENS in a two-count superseding indictment with possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

15.     While reviewing data extracted from the iPhone seized from STEPHENS's person on May 5, 2017, I observed email notifications from Facebook to an account with Facebook ID "Gstar Jose Moschino."  I then reviewed the publicly accessible portion of the Facebook account associated with this Facebook ID, and observed multiple photographs of STEPHENS.  A number of these photographs are contained within an album labeled "Profile Pictures," indicating that STEPHENS is the user of the account.

16.     In my training and experience, traffickers of controlled substances and illegal possessors of firearms frequently use Facebook to post and/or send images of drugs, drug

5

proceeds, and/or firearms, including images of individuals in possession of these items. Those engaged in the illegal buying, selling, and possession of illegal narcotics and/or firearms also use Facebook's messaging system to communicate with customers, coconspirators, or others, regarding the buying, selling, and possession of such contraband.

17.     Indeed, while reviewing the public portion of the Facebook account for "Gstar Jose Moschino," I observed a photograph that appears to depict a large quantity of U.S. currency that I previously observed while searching STEPHENS's iPhone. As noted above, this iPhone also contained multiple images of distribution quantities of controlled substances, and images of STEPHENS in possession of multiple firearms and large quantities of cash. Another photograph on the account's public page appears to depict STEPHENS posing with a quantity of U.S Currency, and a distinctive black bag that appears identical to a bag recovered from STEPHENS's residence on July 12, 2017. The recovered bag contained the marijuana and U.S. Currency described in paragraph 13.

18.     Based upon the foregoing, there is probable cause to believe that violations of 21 U.S.C. § 841(a) and 18 U.S.C. § 924(c) have been committed by MARK JAMAHL STEPHENS, and there is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

19.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

20.      Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

21.      Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

22.      Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

23.      Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items

7

available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

24.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

25.     Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.  In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account.  Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

8

26.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

27.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

28.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

29.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

30.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

31.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

32.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a

Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

33.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

34.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used.  For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access

10

their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

35.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

36.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.

Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

37.     Based on the forgoing, I request that the Court issue the proposed search warrant.

38.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

39.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

Special Agent John M. Capano
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn to before me on ___November 17___, 2017

___/s/___
Ivan D. Davis
United States Magistrate Judge

12

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to information associated with the Facebook user ID "Gstar Jose Moschino" that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody,

or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or

information that have been deleted but are still available to Facebook, or have been preserved

pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the

following information to the government for each user ID listed in Attachment A:

> (a)     All contact and personal identifying information, including full name, user
>
> identification number, birth date, gender, contact e-mail addresses, physical
>
> address (including city, state, and zip code), telephone numbers, screen names,
>
> websites, and other personal identifiers.
>
> (b)     All activity logs for the account and all other documents showing the user's posts
>
> and other Facebook activities;
>
> (c)     All photos and videos uploaded by that user ID and all photos and videos
>
> uploaded by any user that have that user tagged in them, including Exchangeable
>
> Image File ("EXIF") data and any other metadata associated with those photos
>
> and videos,
>
> (d)     All profile information; News Feed information; status updates; videos,
>
> photographs, articles, and other items; Notes; Wall postings; friend lists, including
>
> the friends' Facebook user identification numbers; groups and networks of which
>
> the user is a member, including the groups' Facebook group identification
>
> numbers; future and past event postings; rejected "Friend" requests; comments;

gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)     All "check ins" and other location information;

(g)     All IP logs, including all records of the IP addresses that logged into the account;

(h)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)     All information about the Facebook pages that the account is or was a "fan" of;

(j)     All past and present lists of friends created by the account;

(k)     All records of Facebook searches performed by the account;

(l)     All information about the user's access and use of Facebook Marketplace;

(m)     The types of service utilized by the user;

(n)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

2

**II.      Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 21 U.S.C. § 841(a) and 18 U.S.C. § 924(c) involving MARK JAMAHL STEPHENS, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) The possession or sale of controlled substances and/or the possession of firearms;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).